THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| ANN S., <br><br>    **Plaintiff,** <br><br>v. <br><br>MARTIN J. O'MALLEY,[1] <br>**Commissioner of Social Security,** <br><br>    **Defendant.** | **MEMORANDUM DECISION AND ORDER** <br><br><br>**Case No. 2:23-cv-00826-JCB** <br><br><br>**Magistrate Judge Jared C. Bennett** |

  Under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties have consented to Judge Jared C. Bennett conducting all proceedings in this case, including entry of final judgment.[2] Before the court is Plaintiff Ann S.'s ("Plaintiff") appeal of Commissioner of Social Security Martin J. O'Malley's ("Commissioner") final decision determining that Plaintiff was not entitled to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.[3] After careful consideration of the written briefs and the complete record, the court concludes that oral argument is not necessary. Based upon the analysis set forth below, the court reverses and remands the Commissioner's decision.

---

[1] Martin J. O'Malley is now the Commissioner of Social Security. Under Fed. R. Civ. P. 25(d), he has been substituted for Acting Commissioner of Social Security Kilolo Kijakazi as the Defendant in this case. ECF No. 8.

[2] ECF No. 6.

[3] 42 U.S.C. §§ 401-434.

PROCEDURAL BACKGROUND

Plaintiff alleges disability due to various physical and mental impairments. In February 2018, Plaintiff applied for DIB.[4] Plaintiff's application was denied initially[5] and upon reconsideration.[6] Plaintiff later appeared with counsel for a video hearing before an Administrative Law Judge ("ALJ"),[7] who issued a written decision denying Plaintiff's claim for DIB.[8] Plaintiff appealed the adverse ruling, and the Appeals Council denied her appeal,[9] which made the ALJ's decision final for purposes of judicial review.[10] Thereafter, Plaintiff filed a complaint in this court seeking review of the Commissioner's final decision.

On judicial review, this court reversed and remanded the Commissioner's decision.[11] The court concluded that the ALJ had failed to determine whether Plaintiff's allegations of fibromyalgia constituted a medically determinable impairment ("MDI") under the Commissioner's regulations.[12] The court concluded that this omission was not harmless error because failing to determine whether fibromyalgia constituted an MDI and, if so, whether that MDI was severe or not could affect the limitations in Plaintiff's residual functional capacity

---

[4] ECF No. 7, Administrative Record ("AR ___") 175-83.

[5] AR 88-91.

[6] AR 93-95.

[7] AR 26-52.

[8] AR 9-25.

[9] AR 1-6.

[10] 42 U.S.C. § 405(g); 20 C.F.R. § 404.981.

[11] *Ann S. v. Kijakazi*, No. 2:20-CV-00841-JCB, 2022 WL 204596 (D. Utah Jan. 24, 2022).

[12] *Id*. at *4.

("RFC").[13] An RFC determination can significantly impact the types of jobs available to a claimant and, consequently, a finding of whether the claimant is disabled.

On remand from this court, the Appeals Council vacated the ALJ's decision and remanded it "to an [ALJ] for further proceedings consistent with the order of the court."[14] Where the Appeals Council vacates an ALJ decision on remand from a district court, that ALJ decision ceases to exist and is no longer binding on the post-remand ALJ.[15] In other words, Plaintiff's case before the ALJ on remand was a blank slate.

Following the Appeals Council's vacatur and remand, the ALJ held another hearing on Plaintiff's application.[16] Approximately a month later, the ALJ issued a written decision denying Plaintiff's disability claims.[17] Following an unsuccessful appeal to the Appeals Council,[18] Plaintiff sought judicial review anew by filing this action.[19]

In this action, Plaintiff complains that the ALJ committed the same error as before albeit with different impairments. Specifically, Plaintiff contends that the ALJ failed to find whether impairments such as Achilles tendonitis, plantar fasciitis, bipolar disorder, and attention

---

[13] *Id.* at *5.

[14] AR 546.

[15] *Alicea v. Comm'r of Soc. Sec.*, 855 F. App'x 494, 495-96 (11th Cir. 2021).

[16] AR 480-501.

[17] AR 455-79.

[18] AR 448-54.

[19] ECF No. 1.

deficit/hyperactivity disorder ("ADHD") were MDIs.[20] For the reasons stated below, Plaintiff is correct, and the ALJ's decision is again reversed and remanded.

## STANDARD OF REVIEW

This court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied."[21] The Commissioner's findings, "if supported by substantial evidence, shall be conclusive."[22] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance."[23] "In reviewing the ALJ's decision, [this court may] neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]."[24] "The [f]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal."[25]

---

[20] ECF No. 18 at 5. Plaintiff's opening brief also claims that the ALJ failed to determine whether peroneal tendonitis was an MDI. ECF No. 9 at 6. However, Plaintiff appears to abandon that argument in her reply. *Compare* ECF No. 9 at 6, *with* ECF No. 18 at 5 (excluding peroneal tendonitis from the list of impairments that the ALJ purportedly failed to determine were MDIs).

[21] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations and citation omitted).

[22] 42 U.S.C. § 405(g).

[23] *Lax*, 489 F.3d at 1084 (quotations and citation omitted).

[24] *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quotations and citation omitted).

[25] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (first alteration in original) (quotations and citation omitted).

The aforementioned standards apply to the Commissioner's five-step evaluation process for determining whether a claimant is disabled.[26] If a determination can be made at any one of the steps that a claimant is or is not disabled, the subsequent steps need not be analyzed.[27]

> Step one determines whether the claimant is presently engaged in substantial gainful activity. If [the claimant] is, disability benefits are denied. If [the claimant] is not, the decision maker must proceed to step two: determining whether the claimant has a medically severe impairment or combination of impairments. . . . If the claimant is unable to show that [her] impairments would have more than a minimal effect on [her] ability to do basic work activities, [she] is not eligible for disability benefits. If, on the other hand, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three.[28]

At step three, the claimant must show that his or her impairments meet or equal one of several listed impairments that are "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."[29] "If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits. If not, the evaluation proceeds to the fourth step . . . ."[30] Before considering step four, however, the ALJ must determine the claimant's RFC.[31] An individual's RFC is her greatest ability to do physical and mental work activities on a regular and continuing basis despite

---

[26] 20 C.F.R. § 404.1520(a)(4)(i)-(v); *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step process).

[27] 20 C.F.R. § 404.1520(a)(4); *see also Williams*, 844 F.2d at 750.

[28] *Williams*, 844 F.2d at 750-51 (quotations and citations omitted); *see also* 20 C.F.R. § 404.1520(a)(4)(i)-(ii).

[29] 20 C.F.R. § 404.1525(a); *see also* 20 C.F.R. § 404.1520(a)(4)(iii).

[30] *Williams*, 844 F.2d at 751.

[31] 20 C.F.R. § 404.1520(a)(4), (e).

limitations from her impairments.[32] In making this determination, the ALJ must consider all of the claimant's impairments, including impairments that are not severe.[33]

For the fourth step, the claimant must show, given her RFC, that her impairments prevent performance of her "past relevant work."[34] "If the claimant is able to perform [her] previous work, [she] is not disabled."[35] If, however, the claimant is not able to perform her previous work, she "has met [her] burden of proof, establishing a prima facie case of disability."[36]

From here, "[t]he evaluation process . . . proceeds to the fifth and final step," where the burden of proof shifts to the Commissioner.[37] The decision maker must determine "whether the claimant has the [RFC] to perform other work in the national economy in view of [her] age, education, and work experience."[38] If it is determined that the claimant "can make an adjustment to other work," she is not disabled.[39] If, on the other hand, it is determined that the claimant "cannot make an adjustment to other work," she is disabled and entitled to benefits.[40]

---

[32] *Id.* § 404.1545(a)(1), (b)-(c).

[33] *Id.* § 404.1545(a)(2).

[34] *Id.* § 404.1520(a)(4)(iv).

[35] *Williams*, 844 F.2d at 751.

[36] *Id.*

[37] *Id.*

[38] *Id.* (quotations and citation omitted); *see also* 20 C.F.R. § 404.1520(a)(4)(v).

[39] 20 C.F.R. § 404.1520(a)(4)(v).

[40] *Id.*

ANALYSIS

I. **The ALJ Failed to Determine Whether Plaintiff's Plantar Fasciitis, Bipolar Disorder, and ADHD Were MDIs.**

The court must reverse and remand the Commissioner's decision because the ALJ failed to determine whether Plaintiff's plantar fasciitis, bipolar disorder, and ADHD were MDIs under the Commissioner's regulations implementing the DIB program of the Social Security Act. Congress precluded any individual from receiving DIB "unless [she] furnishes such medial and other evidence of the existence [of a disability] as the Commissioner of Social Security may require."[41] To guide what the Commissioner may require in terms of proving a disability, Congress further specified that "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability."[42] Instead,

> there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment . . . which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished . . . , would lead to a conclusion that the individual is under a disability.[43]

Thus, under the Social Security Act, the Commissioner can find that an impairment exists only if medically acceptable clinical or laboratory techniques show "signs and findings" of such impairment.

To implement this congressional mandate under the Social Security Act, the Commissioner promulgated regulations governing how a claimant can establish the existence of

---

[41] 42 U.S.C. § 423(d)(5)(A).

[42] *Id.*

[43] *Id.*

an impairment. The most recent iteration of these regulations became final in 2017.[44] These 2017 regulations were promulgated to codify the Commissioner's then non-binding policy that he "will not use a diagnosis, medical opinion, or an individual's statement of symptoms to establish the existence of an impairment(s)."[45] Indeed, the Commissioner explained that he "cannot rely on a diagnosis to establish the existence of an impairment because sometimes medical sources diagnose individuals without using objective medical evidence."[46] So instead of relying on a mere "diagnosis," the Commissioner—as required by Congress—chose to rely on "objective medical evidence," which constitutes "signs, laboratory findings, or both" from an "acceptable medical source."[47] If a claimant proffers "signs, laboratory findings, or both" of an impairment from an "acceptable medical source," then the impairment is an MDI.[48] After finding an MDI, the Commissioner must then determine whether that MDI is "severe" when evaluating step two of the above-referenced five-step evaluation process. But the significance of an MDI is not limited to step two. Indeed, when determining a claimant's RFC at step four, the ALJ must consider both severe and non-severe MDIs.[49] In other words, the MDI determination is a driving

---

[44] Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (codified at 20 C.F.R. parts 404 and 416).

[45] Revisions to Rules Regarding the Evaluation of Medical Evidence, 81 Fed. Reg. 62560, 62567 (Sept. 9, 2016) (preamble to draft regulations that were issued for public comment).

[46] Id.

[47] Id.; 20 C.F.R. § 404.1513(a)(1) ("Objective medical evidence is medical signs, laboratory findings, or both as defined in [20 C.F.R.] § 404.1502(f).").

[48] 20 C.F.R. § 404.1521.

[49] 20 C.F.R. § 404.1545(a)(2); *see also* Wells v. Colvin, 727 F.3d 1061, 1068-69 (10th Cir. 2013) ("[A] conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and

force for a DIB determination, and failing to make the MDI determination precludes an ALJ from being able to adequately evaluate a DIB claim at step two or step four.[50] Thus, failing to determine whether a claimant's alleged impairment constitutes an MDI is reversible error.

      The ALJ failed to determine whether Plaintiff's plantar fasciitis, bipolar disorder, and ADHD were MDIs. The ALJ's written decision acknowledged that Plaintiff: (1) had received a plantar fasciitis diagnosis and had received treatment for the pain it caused;[51] and (2) had been diagnosed with bipolar disorder and ADHD.[52] But even though the ALJ's written decision found that Plaintiff's PTSD constituted a "severe" MDI, the written decision failed to: (1) determine whether plantar fasciitis, bipolar disorder, or ADHD are MDIs; (2) explain why they are not MDIs if they are not; or (3) if they are MDIs, whether they are severe or non-severe. The decision simply omits ruling on all these issues despite recognizing that these conditions are present in the record. This type of omission is precisely the reason Plaintiff's first case was previously reversed and remanded and why the present decision must be as well.[53]

      Even though the ALJ's decision omits any reviewable decision on the MDI issues for the aforementioned conditions, the Commissioner argues that this court can affirm the ALJ's

---

making conclusions at steps four and five. In his RFC assessment, the ALJ must consider the combined effect of *all* [MDIs], whether severe or not." (emphasis in original)).

[50] 20 C.F.R. § 404.1520(c) (stating that if a claimant does not suffer from a severe MDI, the Commissioner "will find that [the claimant is] . . . not disabled").

[51] AR 468-69.

[52] AR 469.

[53] Plaintiff contends that the ALJ also omitted ruling on whether Plaintiff's Achilles tendonitis was an MDI. The court omits discussion of this alleged condition because the ALJ never acknowledged it in the record. Moreover, because this action is being remanded and because the Appeals Council will vacate and remand the ALJ's decision, Plaintiff is free to raise Achilles tendonitis as an MDI on remand.

decision because plantar fasciitis, ADHD, and bipolar disorder were not supported by objective medical evidence but were mere diagnoses.[54] However, this explanation amounts to post hoc rationalization. For starters, the ALJ's decision never declines to find the aforementioned conditions as MDIs because they are mere diagnoses. The problem is that the ALJ's decision does not say anything at all about whether those conditions are MDIs. The court cannot assume that the ALJ rejected these conditions as MDIs because they are mere diagnoses where, as here, there is no textual hint in the written decision remotely indicating such a disposition.

But even if this court were to liberally construe the ALJ's decision far beyond the feasible bounds of linguistic elasticity and agree that the ALJ tacitly rejected the aforementioned conditions as MDIs because they are mere diagnoses, the court would still reverse and remand because these conditions appear to be supported by objective medical evidence. For example, an MRI, which is a "laboratory finding,"[55] shows "spurring present at the calcaneal insertion of the plantar fascia with mild thickening through the intermediate band of the fascia."[56] This MRI arguably confirms prior diagnoses of plantar fasciitis,[57] and having an ALJ exercise her/his expertise over whether the medical record evinces plantar fasciitis sufficient to constitute an MDI is imperative to any meaningful judicial review. Not having the ALJ's decision on this important issue makes judicial review an impossibility.

---

[54] ECF No. 14 at 5-7.

[55] 20 C.F.R. § 404.1502(c) (stating that "[l]aboratory findings" include "medical imaging (such as X-rays)," among other things).

[56] AR 1168.

[57] AR 1193.

10

The same can be said about Plaintiff's alleged ADHD and bipolar disorder. The Commissioner contends that these conditions could not be MDIs because "Plaintiff was stable on medications," among other reasons.[58] However, this explanation actually shows why these psychological conditions are not mere diagnoses. Indeed, if Plaintiff was on medication that was adequately treating these conditions, that is medically objective evidence that these conditions are MDIs. To think otherwise would assume that the licensed physicians are handing out powerful mental health medications based on a whim. The court cannot assume such things here. That said, the court acknowledges that if the conditions are well-controlled by medication, an ALJ may reasonably conclude that the impairments are not "severe," but that does not mean that they are not MDIs. Thus, even if the court assumes that the ALJ declined to find Plaintiff's plantar fasciitis, ADHD, and bipolar disorder as MDIs because they were mere diagnoses, that decision would not be supported by substantial evidence.

## CONCLUSION AND ORDER

For the reasons stated above, the ALJ's decision is REVERSED and REMANDED for further proceedings consistent with this Memorandum Decision and Order.

IT IS SO ORDERED.

DATED this 1st day of August 2024.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge

---

[58] ECF No. 14 at 6.